UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
ADIRONDACK INSURANCE EXCHANGE,

                        Plaintiff,

v.                                                                     **OPINION AND ORDER**

ANGELO RUSSO, LAURA RUSSO, and           21-CV-06387 (PMH)
INTERLAKEN OWNERS, INC.,

                        Defendants.
-----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

      Adirondack Insurance Exchange ("Plaintiff" or "Adirondack") commenced this action against Angelo Russo ("Angelo"), Laura Russo ("Laura") (collectively, "Russo Defendants"), and Interlaken Owners, Inc., ("Interlaken" and together with the Russo Defendants, "Defendants") on July 27, 2021. (Doc. 1, "Compl."). Plaintiff seeks a judgment declaring the rights and obligations of the parties under a certain insurance policy issued by Adirondack to Angelo with respect to an alleged incident on August 4, 2020, which resulted in the death of John Brescia Goldstein ("Goldstein"). (*Id*. ¶¶ 1, 47-48). On October 4, 2021, the Russo Defendants filed identical answers to Adirondack's Complaint. (Doc. 17; Doc. 18). Interlaken filed an answer on December 1, 2021. (Doc. 20).

      Pending before the Court is Plaintiff's motion for summary judgment on its claims pursuant to Federal Rule of Civil Procedure 56, served on Defendants on August 21, 2022. (Doc. 43; Doc. 44, "Maxwell Decl."; Doc. 45, "Brownsey Aff."; Doc. 46, "Pl. Br."). Defendants served opposition to the motion (Doc. 48, "Opp.") on September 28, 2022, and the motion was fully submitted with the filing of the motion, a Rule 56.1 Statement (Doc. 47, "56.1 Stmt."), opposition, and Plaintiff's reply papers (Doc. 49, "Reply Br."; Doc. 50, "Maxwell Reply Aff.") on October 12, 2022.

1

For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

The facts recited below are taken from the Complaint, the Rule 56.1 Statement,[1] and the admissible evidence submitted by the parties.

I.    The Adirondack Policy

Adirondack issued a ONECHOICE HOMEOWNERS POLICY (Policy No. 2004060040) to Angelo for his property at 75 Mill Rd., Eastchester, New York, which was in effect from August 13, 2018 to August 13, 2019 (the "Adirondack Policy"). (56.1 Stmt. ¶ 10; Brownsey Aff., Ex. A). Angelo's spouse, Laura, also qualified as an insured under the Adirondack Policy. (56.1 Stmt. ¶¶ 12-13).

The Adirondack Policy contained form H0 3000 01 06, Homeowners–Special Form ("Homeowners Special Form"), which states in relevant part:

> **SECTION II – LIABILITY COVERAGES**
> **A. Coverage E – Personal Liability**
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
>
> Paragraph 2. is deleted and replaced by the following:
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

---

[1] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." *Id*. at 56.1(d). Thus, the Court deems Plaintiff's statements of fact admitted unless specifically controverted by Defendants and supported by evidence. *Brooke v. Cnty. of Rockland*, No. 17-CV-03166, 2021 WL 809320, at *2 (S.D.N.Y. Mar. 3, 2021), *aff'd*, No. 21-598-CV, 2022 WL 6585350 (2d Cir. Oct. 11, 2022).

> **B. Coverage F – Medical Payments To Others**
> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees" . . . .

(*Id*. ¶ 11).

Additionally, the Homeowners Special Form precludes coverage for the following:

> **SECTION II – EXCLUSIONS**
> ***
> **F. Coverage E – Personal Liability And Coverage F– Medical Payments To Others**
> ***
> 6. "Bodily injury" to you or an "insured" as defined under Definition 5.a.
>
> This exclusion also applies to any claim made or suit brought against you or an "insured":
>
> a. To repay; or
> b. Share damages with;
>
> another person who may be obligated to pay damages because of "bodily injury" to an "insured".
> ***
> G. Coverage F – Medical Payments To Others Coverage F does not apply to "bodily injury":
>
> 4. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."
> ***

(*Id.* ¶ 14).

The Adirondack Policy was periodically renewed thereafter including the period of March 26, 2020 to March 26, 2021. (Brownsey Aff., Ex. A; Opp., Ex. B at 3). The Adirondack Policy renewal notice included a list of "[a]attachments" and stated that "[t]he following Forms, Endorsements and Exceptions to Conditions are part of this policy at the time of issuance. Please

3

read them carefully." (Brownsey Aff., Ex. A at 7; Opp., Ex. B at 5). This list included the Homeowners Special Form. (*Id.*).[2]

II.  Related Incident and Litigations

On August 4, 2020, Laura's brother, Goldstein, was struck by a falling tree at 75 Mill Road and subsequently died. (Pl. Br. at 6; Opp. ¶¶ 1, 13). Thereafter, Adirondack provided first-party coverage to Angelo and Laura under the terms of the Adirondack Policy for property damage resulting from the fallen tree. (Brownsey Aff., ¶ 13).

On January 8, 2021, Angela Goldstein, as the Administratrix of Goldstein's estate, filed a wrongful death action against Angelo, Laura, and Interlaken in New York State Supreme Court, County of New York, captioned *Angela B. Goldstein, as the Administratrix of the Estate of John Brescia Goldstein, deceased v. Interlaken Owners, Inc., Angelo Russo, and Laura Russo*, No. 150259/2021 ("Wrongful Death Action"), seeking damages associated with Goldstein's injury and death resulting from the fallen tree. (Maxwell Decl., Ex. G). The Wrongful Death Action is premised on allegations that the tree was controlled by Angelo, Russo, and/or Interlaken, and that their negligence caused Goldstein's death. (*Id.*). Adirondack provided coverage to the Russo Defendants in the Wrongful Death Action. (Opp. ¶ 13).

On January 29, 2021, Laura filed a lawsuit against Interlaken in New York State Supreme Court, County of New York, captioned *Laura Russo v. Interlaken Owners, Inc.*, No. 151062/2021 ("Underlying Action"), premised on the same incident. (56.1 Stmt. ¶ 1; Maxwell Decl., Ex. H).

---

[2] Defendants contend, through their attorneys' joint affirmation, that the renewal policy cited by Plaintiff (Brownsey Aff., Ex. A) is not the correct version of the renewal policy that was sent to the Russo Defendants, and that the true renewal policy, attached to their Opposition as Exhibit B, failed to provide the Homeowners Special Form as an attachment. (Opp. ¶¶ 3, 10, Ex. B). Defendants do not support this contention with any affidavit by a person with personal knowledge and the hearsay attorneys' joint affirmation sheds no admissible light on the argument. Regardless, whether the Homeowners Special Form was attached to the renewal policy is not material to a proper resolution here given that delivery or actual possession is not required to enforce an insurance contract, as discussed *infra*.

The Underlying Action alleges that Interlaken was responsible for the tree and that the tree fell due to Interlaken's negligence. (Maxwell, Ex. H; 56.1 Stmt. ¶¶ 3-4). Laura asserts that she was present in the zone of danger created by Interlaken's negligence and suffered severe mental and emotional trauma as a result of witnessing her brother's death. (Maxwell, Ex. H; 56.1 Stmt. ¶¶ 4-5).

On May 7, 2021, Interlaken filed a third-party complaint against Angelo in the Underlying Action, asserting that Angelo was responsible for the tree at issue ("Third-Party Action"). (56.1 Stmt. ¶¶ 6-7; Maxwell Decl., Ex. I). Interlaken asserts that any injuries sustained by Laura are a result of Angelo's negligence, and that Interlaken is entitled to common law indemnification, contribution, and attorneys' fees from Angelo. (56.1 Stmt. ¶ 8; Maxwell Decl., Ex. I).

The Third-Party Action was first tendered to Adirondack on behalf of Angelo on June 21, 2021. (56.1 Stmt. ¶ 15; Brownsey Aff. ¶ 6). Adirondack issued a disclaimer of coverage (the "Disclaimer") under the Adirondack Policy for Interlaken's claims asserted against Angelo in the Third-Party Action by letter dated July 7, 2021.[3] (56.1 Stmt. ¶ 16; Brownsey Aff. ¶¶ 7-9, Ex. C). The Disclaimer relies on the coverage and exclusion provisions in the Homeowners Special Form identified above. (56.1 Stmt. ¶¶ 17-18; Brownsey Aff., Ex. C). Adirondack agreed in the Disclaimer to provide a defense to Angelo in the Third-Party Action until such time as a judicial declaration is made regarding its coverage disclaimer under the Adirondack Policy. (56.1 Stmt. ¶ 19).

This litigation followed.

---

[3] The Russo Defendants contest ever having received the Disclaimer letter in the Rule 56.1 Statement (56.1 Stmt. ¶ 16) but assert in Opposition that the Disclaimer was issued on July 7, 2021. (Opp. ¶ 13). Accordingly, the Court finds no genuine dispute as to the fact that the Disclaimer was issued on July 7, 2021.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

**ANALYSIS**

Plaintiff seeks the following judicial declarations concerning the Adirondack Policy and Disclaimer:

> (1) that [Adirondack] is not obligated to provide insurance coverage under the Adirondack Policy to any party for the claims asserted in the Underlying Action and/or Third-Party Action; (2) that [Adirondack] does not have a duty to defend and/or indemnify [Angelo], or any other party under the Adirondack Policy for the claims asserted in the Underlying Action and/or Third-Party Action; and (3) that [Adirondack] may withdraw from the courtesy defense that it is currently providing [Angelo], in the Third-Party Action.

(Compl. at 9-10). Defendants oppose these declarations on the basis that the Russo Defendants never received a copy of the relevant exclusions in the Adirondack Policy and the Disclaimer was untimely. (*See generally* Opp.).

I. <u>The Adirondack Policy is Enforceable.</u>

Defendants do not attack the substance of the Adirondack Policy's exclusions or the Disclaimer. Indeed, the exclusions literally preclude coverage for Laura's damages because she is an "insured" under the policy; and separately because she regularly resides at the "insured location." (56.1 Stmt. ¶¶ 13-14). Rather, Defendants contend there is an issue of fact regarding whether the relevant exclusions are enforceable because the Russo Defendants never received any copies of the Adirondack Policy.[5] (Opp. ¶¶ 5-6). The Court disagrees.

The law is clear, and Defendants concede (*Id*. ¶ 7), that "neither delivery nor actual possession by the insured is essential to the completion of contract of insurance." *Maurice v. Allstate Ins. Co.*, 570 N.Y.S.2d 654, 655 (App. Div. 1991) (citing 68 N.Y. Jur. 2d, Insurance, §

---

[5] Defendants make vague reference to the "testimony of both Russo Defendants" as support for the proposition that "they did not receive any copies of any insurance policies from Adirondack." (Opp. ¶ 5). However, it does not appear that either made that statement. Laura testified that she did not have a copy of the Adirondack Policy and that Angelo is the one who handles the procurement of insurance for their household. (Maxwell Decl., Ex. K, "Laura Dep. Tr." at 20:16-20, 41:17-19). Angelo testified that he was aware of the Adirondack Policy and that it was renewed, had communicated with an insurance broker from Adirondack via telephone, but had never read the policy. (Maxwell Decl., Ex. J, "Angelo Dep. Tr." at 17:9-2, 18:4-12, 27:22-28:6, 48:16-49:8).

652, at 755); *see also B & A Demolition & Removal, Inc. v. Markel Ins. Co.*, 941 F. Supp. 2d 307, 313 (E.D.N.Y. 2013) ("Plaintiffs' argument they never received copy of insurance policy . . . does not create triable issue of fact; neither delivery nor actual possession by insured is essential to completion of contract of insurance.")

Defendants further argue that even assuming the Russo Defendants did receive "some version of the subject insurance policy," the renewal policy they purportedly received is not enforceable because it did not include the Homeowners Special Form as an attachment. (Opp. ¶¶ 6-10). Whether the attachment was provided with the renewal policy is inconsequential because receipt is not required to enforce an insurance contract. This is particularly true where, as here, the Homeowners Special Form was incorporated by reference in the renewal policy. (Brownsey Aff., Ex. A at 7; Opp., Ex. B at 5); *see Weintraub v. Great N. Ins. Co.*, 571 F. Supp. 3d 250, 258 (S.D.N.Y. 2021) ("It is also well established that under New York insurance law, [n]either delivery nor actual possession by the insured is essential to the completion of a contract of insurance. . . Accordingly, New York courts routinely enforce coverage limitations contained in undelivered parts of an insurance policy that were nonetheless incorporated by reference by the delivered policy, regardless of whether the plaintiffs received actual delivery of the [pages containing the coverage limitation]".).

In any event, the Russo Defendants previously relied on the Homeowners Special Form of the Adirondack Policy and cannot now deny its enforceability. *See Hirshfeld v. Maryland Cas. Co.*, 671 N.Y.S.2d 100, 101 (App. Div. 1998) ("the plaintiffs cannot seek the benefit of the coverage provided by the endorsement without being subject to the limitations of that coverage") (citing *Schunk v. New York Cent. Mut. Fire Ins. Co.*, 655 N.Y.S.2d 210 (App. Div. 1997)). The Russo Defendants made a property damage claim to Adirondack for damage caused by the fallen

9

tree and received coverage under the Homeowners Special Form. (Brownsey Aff., ¶ 13, Ex. B, Doc. 45-6 at 19-32). The Russo Defendants also received coverage under the Homeowners Special Form for litigation arising from the tree fall incident. Specifically, Adirondack provided the Russo Defendants with coverage in the Wrongful Death Action. (Opp. ¶ 13). Separately, Adirondack is paying for Angelo's defense in the Third-Party Action until such time as this Court makes a determination on the Disclaimer. (56.1 Stmt. ¶ 19). Accordingly, the record evidence shows that Defendants have received the benefits of coverage under the Homeowners Special Form of the Adirondack Policy several times, and Defendants cannot now avoid the exclusions that limit their coverage.

II.     The Disclaimer Was Timely.

The parties dispute whether the Disclaimer was timely. (Opp. ¶ 11; Reply at 6-8). The duty to disclaim coverage is triggered where "the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage." *Country-Wide v. Preferred Trucking Servs. Corp.*, 6 N.E.3d 578, 581 (N.Y. 2014). The question therefore is at what point Plaintiff had sufficient knowledge of facts to disclaim, or knew that it would disclaim, coverage for Laura's alleged mental and emotional injuries.

Defendants suggest that the duty to disclaim was triggered when Plaintiff learned of the tree fall incident through the filing of the Wrongful Death Action. (Opp. ¶ 13). The Disclaimer, however, is based on an exclusion for bodily injury to an insured and not the decedent or his estate. The Wrongful Death Action did not provide a basis for Plaintiff to disclaim coverage because it concerned coverage for damages asserted by the Estate of John Goldstein, not damages for Laura's alleged mental and emotional injuries. Additionally, the Underlying Action did not trigger the duty to disclaim because it sought damages from Interlaken, an entity that is not insured by Adirondack,

10

so there was no coverage to begin with. Therefore, the Third-Party Action was the first event to involve a claim for bodily injury by an Adirondack insured, Laura, and brought against an insured under the Adirondack Policy, Angelo.

Given that the Third-Party Action was first tendered to Adirondack on June 21, 2021, (56.1 Stmt. ¶ 15), and the Disclaimer was issued on July 7, 2021, approximately seventeen (17) days later, the Court finds that the Disclaimer is timely. *See i.e.*, *Tower Ins. Co. of New York v. Khan*, 941 N.Y.S.2d 560 (App. Div. 2012) ("[P]laintiff's disclaimer of coverage was not untimely as it came seventeen (17) days after it had obtained and confirmed all the facts warranting the disclaimer of coverage").

Accordingly, the Court grants summary judgment to Plaintiff on its claims for declaratory judgment. The exclusions to coverage at issue simply preclude coverage for the Underlying Action and Third-Party Action.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED for the declaratory relief sought in the Complaint, as follows: (1) that [Adirondack] is not obligated to provide insurance coverage under the Adirondack Policy to any party for the claims asserted in the Underlying Action and/or Third-Party Action; (2) that [Adirondack] does not have a duty to defend and/or indemnify [Angelo], or any other party under the Adirondack Policy for the claims asserted in the Underlying Action and/or Third-Party Action; and (3) that [Adirondack] may withdraw from the courtesy defense that it is currently providing [Angelo], in the Third-Party Action.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 43) and close this case.

Dated: White Plains, New York
       September 20, 2023

SO ORDERED:

_____
Philip M. Halpern
United States District Judge